UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MARIO A. HARRIS,

        Plaintiff,

        v.                                        Case No. 20-C-950

MICHAEL MEISNER,
CAPTAIN SCHLOSSTIEN,
LIBRARIAN MILLS,
DEPUTY WALKER,
CAPTAIN KELLERS,
CAPTAIN WESNER, and
DEPUTY WARDEN BARBER,

        Defendants.

---

# SCREENING ORDER

---

Plaintiff Mario Harris, an inmate confined at Redgranite Correctional Institution, filed a *pro se* complaint under 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights. This order resolves Harris' motion for leave to proceed without prepaying the filing fee and screens his complaint.

**1. Motion for Leave to Proceed without Prepaying the Filing Fee**

The Prison Litigation Reform Act (PLRA) applies to this case because Harris was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On June 29, 2020, U.S. Magistrate Judge William Duffin (the judge assigned to the case at that time) ordered Harris to pay an initial partial filing fee of $5.50. ECF No. 5. Harris paid that fee on July 13, 2020. The court will grant Harris' motion for leave to proceed without prepaying the filing fee. He must pay the remainder of the filing fee over time in the manner explained at the end of this order.

**2. Screening the Complaint**

*2.1 Federal Screening Standard*

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983 a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under color of state law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes *pro se* complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

*2.2 Harris' Allegations*

Harris alleges that he was transferred from Fox Lake Correctional Institution to Redgranite Correctional Institution on August 8, 2018. He alleges that about four boxes of legal materials were taken from him when he arrived at Redgranite. These materials included all of his discovery in two criminal cases and one civil case. Harris asserts that he complained to the warden and numerous others that the materials should not be taken from him because they are part of his criminal appeal and he might need the materials to seek collateral relief. Harris explains that, on September 5, 2018, Captain Messner told him that the materials would be destroyed if he did not get someone to pick them up.

Harris explains that his sister took the materials home after she came to Redgranite on about October 15, 2018. According to Harris, his sister had to move out of her house abruptly, and she accidentally left the materials behind. When she returned to get them, they were gone. Harris says the boxes contained hundreds of hours of legal work.

Harris asserts that, on March 15, 2019, his former attorney, who had exhausted Harris' appeal in state court, sent Harris his case file so Harris could restart his collateral appeal efforts. Harris says the materials his former attorney sent included four boxes of legal documents and

3

twenty-seven CDs/DVDs.  Harris alleges that he and multiple staff members went through all of it.  An officer (who is not a defendant) allegedly informed Harris that the twenty-seven CDs would be sent to Mills, the institution librarian.  A few days later, Mills called Harris to the library, where the two of them went through "the contents of these legal discoverables piece by piece."  ECF No. 1 at 3.  Harris says that Mills flagged three CDs for additional screening and explained to him they would be sent to defendant security office captain Schlosstien to be reviewed.  Harris asserts that he asked Mills if he would be present for the viewing as required by policy, and she told him no.

Harris states that one of the three CDs had a Milwaukee Police Department logo on it, one had a Village of West Milwaukee Police Department logo on it, and one had no logo.  It is not clear from Harris' allegations, but it appears that all three CDs were confiscated after Schlosstien's review.  *See* ECF No. 1 at 4.  Harris asserts that he filed an inmate complaint explaining that the CDs were part of his criminal case and he needed them to support his collateral motion.  Harris states that, on June 12, 2019, the DOC secretary's office gave him permission to view the CDs but ordered the institution to retain possession of the CDs.

Harris says his time to view the CDs was limited to fifty minutes per week for three months.  He also asserts that he told defendant Captain Kellers that the computers he was supposed to use to view the CDs did not have a program that would allow him to view the contents.  Harris alleges that the CD with the Milwaukee Police Department logo went missing.  According to Harris, he has been able to view some of the other two CDs' contents on the computer in the library.  He says that he "doesn't know whether or not the state officials have destroyed portions of discoverables by erasing them that are needed for post-conviction relief motions."  ECF No. 1 at 5.

4

*2.3 Analysis*

Harris sues Mills, the librarian, for violating Wis. Admin. Code § 309.04, although he does not clarify what he believes she did to violate that provision. Section 309.04(3) states that staff may open mail received by an inmate from his attorney in the presence of the inmate and may inspect the contents to the extent necessary to determine if it contains contraband or if the purpose is misrepresented. Based on Harris allegations, it appears Mills complied with this provision, which allowed her to inspect, in Harris' presence, the contents of the CDs. In any event, even if Mills had violated this provision, doing so would not create a cause of action. The Court of Appeals for the Seventh Circuit has consistently held that "a violation of a state policy does not give rise to a constitutional claim." *Harris v. Manlove*, 799 F. App'x 423, 426 (7th Cir. 2020).

Further, the Seventh Circuit has explained that "prison employees, who routinely and for obvious reasons of security open prisoners' incoming mail, should be permitted to open incoming mail from a prisoner's lawyer to verify that it is indeed a communication . . . from a lawyer who is authorized to practice law in the relevant jurisdiction and is in fact the prisoner's lawyer; on the other hand the prisoner should be allowed to be present when the letter is opened." *Guajardo-Palma v. Martinson*, 622 F.3d 801, 804 (7th Cir. 2010). Nothing in Harris' complaint suggests that Mills' inspection of the CDs' contents went beyond that which the Seventh Circuit has deemed permissible. Accordingly, Harris does not state a claim against Mills based on his allegations that, while he was present, she went through the documents his lawyer sent him.

Harris also fails to state a claim against Schlosstien, the security office captain, based on his allegations that he reviewed three CDs flagged by Mills. Harris does not allege that the CDs contained private communications between him and his attorney. Instead, he says they contained documents prepared and produced by a third party during the discovery phase of Harris' criminal

5

case.  Because the documents were not private communications from Harris' former lawyer to Harris, Schlosstien did not violate Harris' constitutional rights when he reviewed the CDs' contents without Harris being present.

Harris also fails to state a claim against Defendants based on his allegation that one of the twenty-seven CDs went missing.  Under Federal Rule of Civil Procedure 8(a)(2), a plaintiff's complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  A complaint that offers merely a "formulaic recitation of the elements of a cause of action will not do."  *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Harris concludes that Defendants (Schlosstien in particular) must have destroyed the discovery materials his former attorney sent him to retaliate against him for filing grievances about staff taking his property.  The court cannot reasonably infer from the factual assertions in Harris' complaint that Defendants did what Harris concludes they did.  Harris alleges that he received four boxes of documents and twenty-seven CDs/DVDs containing discovery materials from his criminal cases.  Defendants in this lawsuit had no involvement in those cases, so they did not benefit in any way from certain materials going missing.  According to Harris, after reviewing the materials with him, staff allowed him to keep four boxes of documents and arranged time over the course of three weeks for him to view the limited number of CDs he could not keep in his possession.  One CD (of the twenty-seven) then went missing.

Harris speculates that Defendants destroyed the CD to retaliate against him, but such a conclusion is not plausible in light of Harris' factual allegations. Harris does not allege that Schlosstien (or any other Defendant) made comments suggesting they were upset about his grievances. And Harris describes Defendants' significant efforts to ensure his access to many other documents. Defendants also had nothing to gain from destroying the CD because they were not involved in Harris' criminal cases and they still had to arrange time for Harris to view the contents of the other CDs. The only plausible inference based on Harris' allegations is that the missing CD was negligently misplaced or misfiled. But negligent conduct is insufficient to form the basis of a constitutional claim. *See Aguilar v. Gaston-Camara*, 861 F.3d 626, 633 (7th Cir. 2017).

Harris also fails to state a claim against Messner based on his allegations that, shortly after Harris transferred to Redgranite, Messner required Harris to either send his property out or have it destroyed. Messner did not deprive Harris of his property—he merely enforced the institution's policy regarding the amount of property an incoming inmate may possess. Harris chose to have his sister pick up the documents he could not keep in his cell. Messner is not responsible for what happened to the documents after Harris' sister picked them up. Under § 1983, "a public employee's liability is premised on h[is] own knowledge and actions." *Id.* at 630.

Finally, Harris does not state a claim against Defendants based on his assertion that they denied him access to the courts when they limited his access to some of the discovery materials his former attorney sent him. "A prisoner states an access-to-courts claim when he alleges that even though he successfully got into court by filing a complaint or petition challenging his conviction, sentence, or conditions of confinement, his denial of access to legal materials caused a potentially meritorious claim to fail." *Marshall v. Knight*, 445 F.3d 965, 969 (7th Cir. 2006). The Seventh Circuit has emphasized that a plaintiff must point to "an actual or imminent injury—

7

as opposed to a merely speculative future one . . . ." *Id.* at 696–70. Harris alleges only that the discovery materials he is unable to access *may* be relevant to a habeas petition. From Harris' complaint it is not clear that he has even filed a habeas petition, but certainly none of his allegations suggest that a petition was denied because he was unable to access some of the discovery materials. Because Harris fails to identify an actual injury, he does not state an access-to-courts claim.

### 3. Conclusion

**THEREFORE, IT IS ORDERED** that Harris' motion for leave to proceed without prepaying the filing fee (ECF No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED** under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim.

**IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has incurred a "strike" under 28 U.S.C. § 1915(g).

**IT IS FURTHER ORDERED** that the agency having custody of Harris shall collect from his institution trust account the $344.50 balance of the filing fee by collecting monthly payments from Harris' prison trust account in an amount equal to 20% of the preceding month's income credited to his trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Harris is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with his remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Harris is confined.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Green Bay, Wisconsin this 5th day of August, 2020.

        s/ William C. Griesbach
        William C. Griesbach
        United States District Judge

---

This order and the judgment to follow are final. Plaintiff may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. § 1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.